GROSS, Administrator, Respondent, vs. ARIANS, Appellant.

*April 11—April 29, 1913.*

*Deeds: Recital of consideration, etc., not a promise to pay: Evidence: Gift in fraud of creditors or others: Promise not implied: New trial: Sufficiency of motion.*

1. The mere recital of consideration in a deed, coupled with an acknowledgment of its payment, is some evidence of the amount paid, or to be paid, where the obligation to pay is admitted or otherwise proven; but it may not be evidence at all that the grantee promised to pay that sum.

2. Assent of the grantee to such a recital may be presumed from his acceptance of the deed, but he does not thereby admit that there was a promise on his part to make future payment.

3. Such a recital and the acknowledgment of payment are consistent with the idea that the conveyance was a gift by the grantor to defraud creditors or to hinder, delay, or defraud suitors out of their lawful actions; and the proposition is not controverted, but rather corroborated, by the facts that no note or other evidence of an existing debt was made by the grantee, and that he stated that he had bought the land for the amount named and had paid for it.

4. The supreme court, on appeal, may review the sufficiency of the evidence to support the verdict, although the motion for a new trial, made in the circuit court after verdict and before judgment, did not expressly ask that the verdict be set aside.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The following statement of facts from appellant's brief seems correct and is not attacked by respondent's counsel:

"This is an action at law commenced by *Albin Gross* as administrator of the estate of Peter Gross, deceased, against *Anton Arians* to recover the sum of $11,000 and interest. It is alleged in the complaint that on the 18th day of February, 1908, Peter Gross was the owner of a farm in Sun Prairie and of twenty acres not connected with the farm, and that on the last named date he sold the same to *Anton Arians* for $17,000 and conveyed the same by warranty deed; that Peter Gross died intestate on the 29th day of April, 1908, and the plaintiff was appointed his administrator; and that the defendant, *Anton Arians,* never paid to the said Peter Gross nor to any one for him the said sum of $17,000 or any part thereof except $6,000; and the plaintiff demanded judgment for $11,000 with interest from February 18, 1908.

"The answer of the defendant admitted the representative character of the plaintiff and admitted the ownership in Peter Gross of the lands described in the complaint on the 18th day of February, 1908, and admits that on that date Peter Gross executed and delivered to the defendant a warranty deed of said lands, and admits that thereafter and after the death of said Peter Gross he assigned to the plaintiff a mortgage for the sum of $6,000, and denies each and every other allegation in the complaint contained, and especially denies that he ever promised to pay Peter Gross the sum of $17,000 or any other sum or any other valuable thing for the said lands, and denies that he was ever indebted to Peter Gross or to the plaintiff in any sum.

"The action was tried before a jury, resulting in a verdict for plaintiff for the sum of $11,824.24, and in a judgment for damages and costs in the sum of $11,924.90. The defendant moved for a new trial, which motion was denied by the court. And thereupon the defendant moved for a new trial on the ground of newly discovered evidence. Denied. The defendant appeals from the judgment and also from the denial of his motion for a new trial on the grounds of newly discovered evidence.

"Peter Gross was an unmarried man who had lived for some years in the village of Sun Prairie and owned this farm

and some other property. He had contracted the farm to Henry Miller and there was unpaid on the contract $14,000. The Miller contract did not cover the twenty acres which is also described in the deed, and for this twenty acres the defendant after the transaction received $1,200. Peter Gross had been accused of undue intimacy with the wife of Mr. Fiebeger. Mr. Gross expected to be sued by Fiebeger and was apparently very much alarmed at the prospect. On the 17th day of February, the day before the execution of this deed, he came to the office of Judge Jno. C. Fehlandt in Madison in the forenoon and asked Mr. Fehlandt to draw a deed of this property to *Anton Arians*. When asked to whom he wanted to sell his property, he said he wanted to give his property to *Anton Arians*. When asked for what consideration, he said for no consideration at all. He said he was going to give his farm to *Anton Arians*. In the afternoon of the same day he came to Mr. Fehlandt's office again in company with *Mr. Arians* and again stated that he wanted to give the property to *Mr. Arians*, and when it was suggested if he wanted to give it away he might give it to his brother *Albin*, he said his brother *Albin* should never have a cent of it. Mr. Fehlandt did not draw the deed, but told them he would the next day if Mr. Gross was still in the same frame of mind.

On the next day, February 18th, Peter Gross and *Mr. Arians* went from Sun Prairie to the village of Waterloo, Jefferson county. In the forenoon of that day *Mr. Arians* went to the office of M. W. Locke, an attorney, where he transacted some business not relating to this matter. After dinner of that day Peter Gross and the defendant, *Arians*, together went to the office of Mr. Locke. Mr. Gross produced a deed and abstract and made the request of Mr. Locke that he draw a deed to *Mr. Arians* of the land described in the deed and abstract. Such deed was drawn and was executed by Mr. Gross and the acknowledgment taken before Mr. Locke as a notary public. Mr. Gross handed the deed to *Mr. Arians* and told him to have it recorded. The abstract was handed back to Mr. Gross, he turned it over to *Mr. Arians*. Another paper was drawn, a contract which was given by Gross to *Arians* and afterwards returned by *Arians* to Mr. Gross.

"At the time of the execution of the deed there was no money paid by *Mr. Arians* to Mr. Gross.    There was no note given and no mortgage given and nothing was said about payment, nor was anything said about the time of payment.    This deed was brought on the next day to Madison by *Mr. Arians* and was put on record.    Immediately after the execution of this deed Peter Gross left Sun Prairie and went to another state. Immediately after his departure an action was commenced by Mr. Fiebeger against Peter Gross, and both Mr. Miller and the defendant, *Anton Arians,* were garnished.    Peter Gross died April 29th and these garnishments were dismissed on October 27, 1908.

"*Mr. Arians,* the defendant, sold the twenty acres for $1,200, and on the 9th day of November, 1908, deeded the farm to Mr. Miller and received $3,000 in money and two mortgages, one of $5,000 and one of $6,000.    On the 3d day of December, 1908, the defendant assigned to the plaintiff administrator the $6,000 mortgage which he had taken from Mr. Miller on giving a deed of the farm and received from the plaintiff a receipt.    This action was commenced February 21, 1911."

The following detail may be supplied: The deed contained these words: "For and in consideration of seventeen thousand (17,000) dollars, to him in hand paid by the party of the second part, the receipt whereof is hereby confessed and acknowledged, has given," etc.    Appellant soon after the execution of the deed said to Miller that he had bought the land from Peter Gross and paid $17,000 for it.    Appellant denies this, but we will assume for the purpose of this decision that he said so.    The $6,000 mortgage was not assigned to the plaintiff in part payment of any debt confessed or admitted to be due, but without stipulation or treaty of any kind.    The motive for so doing, as testified to by appellant, was to ease his conscience and escape the censure or win the approval of his neighbors.

*Rufus B. Smith,* for the appellant.

For the respondent there was a brief by *Aylward, Davies, Olbrich & Hill,* and oral argument by *M. B. Olbrich.*

TIMLIN, J.    No equities of creditors are involved.    There
is no evidence that Peter Gross sold this farm to *Arians* or
that the latter ever agreed to pay for it, except the recital of
consideration paid in the deed, the alleged admission of
*Arians* to Miller, and the assignment to the administrator of
the $6,000 mortgage.    These are each and all explained and
avoided by other facts in the case.    The testimony of Judge
Fehlandt is entirely uncontradicted and is to the effect that
Peter Gross on February 17, 1908, requested him to draft a
deed of this property from him, Gross, to the appellant; that
he wished to give this property to appellant because he ex-
pected to be sued—expected a lawsuit; that there was no con-
sideration, and in substance that he desired to make a gift of
the property to appellant.    Being asked why, if he intended
to give away his property, he did not give it to one of his
brothers, he persisted in his desire to make a gift to appel-
lant.    Appellant was present.    Judge Fehlandt refused to
draw the deed, but told Gross to think of it over night and
come the next day.    The next day Peter Gross and the ap-
pellant went to the office of Mr. Locke, a lawyer at Water-
loo, and there the deed in question was executed and deliv-
ered and the appellant immediately caused it to be recorded.
There was nothing said about payment, no note or mortgage
executed.    Peter Gross left the state and the expected suit
was commenced against him, and the appellant and others
garnished.    If the suit was of the nature described in the
briefs of counsel it would probably abate by the death of
Peter Gross; however, it was discontinued after his death.
The declaration of appellant to Miller, if it was made, must
be considered as made.    It was not that he bought the land
and owed for it, but that he bought the land and paid for it.
The recital quoted from the deed is of the same character.
While both, treated as declarations, are inconsistent with the
notion of an ordinary gift *inter vivos,* they are in line with
what would be ordinarily written or said in the case of a gift

by deed made to defraud creditors. Here the uncontroverted testimony of Judge Fehlandt comes in to throw light upon the whole transaction, and it is rather corroborated by the two items of evidence last above mentioned as well as by all the other facts of the case.

It is quite a serious thing to impose upon a man a contract which he never made. The mere recital of consideration in a deed, coupled with an acknowledgment of its payment, is some evidence of the amount of the consideration paid, or to be paid, where the obligation to pay is admitted or otherwise proven. But it may not be evidence at all that the grantee promised to pay that sum. That would depend upon other facts in evidence. Such recital presents nothing of a promise or contract, merely a declaration of the fact that this was the amount of the consideration, and the declaration is made by the grantor. *Jost v. Wolf,* 130 Wis. 37, 43, 110 N. W. 232.

The assent of the grantee may be presumed from his acceptance of the deed, but what did he assent to? Surely not that there was a promise on his part to make future payment. See, also, *McGiverin v. Keefe,* 130 Iowa, 97, 106 N. W. 369; *Mowrey v. Vandling,* 9 Mich. 39. The recital in this deed is not inconsistent with the notion of a gift to defraud creditors. We have used the word "creditors" because that describes the ordinary and best understood case, but the law is the same as regards gifts made to hinder, delay, or defraud suitors out of their lawful actions, etc. *Corry v. Shea,* 144 Wis. 135, 128 N. W. 892. The proposition, therefore, that the conveyance was a gift made by Peter Gross to hinder and delay the plaintiff in the then threatened action is in no degree controverted but rather corroborated by all the other circumstances in the case, including the recital of consideration and acknowledgment in the deed, there having been no note or other evidence of an existing debt made; and including the false statement of *Arians* to Miller that he bought

the land for $17,000 and paid for it. In such case the law leaves the parties just where they put themselves, and there is no promise implied to pay any other consideration than that agreed upon by and between the parties to the deed. The court instructed the jury:

"In considering the question whether Mr. Peter Gross did give this farm to *Mr. Arians,* it is the law that one may give his property to any one whom he pleases. If the evidence establishes the fact that Peter Gross did in fact make a gift of this farm to *Mr. Arians,* the plaintiff cannot recover."

The jury, however, apparently viewed the case from their standpoint of things as they ought to be rather than from that of things as they are. We must hold that there is no evidence to support the verdict holding the appellant upon a promise to pay Peter Gross for this land.

It is contended that, because in his motion for a new trial upon the minutes after verdict and before judgment the appellant did not expressly ask that the verdict be set aside, the sufficiency of the evidence to support the verdict cannot be reviewed in this court. This is too technical. A motion for a new trial so made could ordinarily be granted only by setting aside the verdict, and therefore the request made includes setting aside the verdict. We believe nothing contrary to this can be found in the decisions of this court.

It is not necessary to consider the appeal from the order denying a new trial on the ground of newly discovered evidence.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings according to law.